William J. King, Esq. (Bar No. 199908)
William C. Hoggard, Esq. (Bar No. 192329)
HORIZON LAW GROUP LLP
17991 Cowan St.
Irvine, CA 92614
Tel.:   (949) 261-2500
Fax:   (949) 261-2515
Email:        wking@horizonlawgroup.com

JULIE A. AULT, Esq. (Bar No. 186914)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:   (949) 719-7212
Fax:   (949) 719-7210
Email:        jault@olenproperties.com

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| IGOR OLENICOFF, an individual; OLEN PROPERTIES CORP., a Florida corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>UBS AG, a foreign Swiss corporation, et al.<br><br>                              Defendants. | CASE NO.  8:08-CV-01029-AG-RNB<br><br>**PLAINTIFFS' OPPOSITION TO THE MOTION OF SPECIALLY-APPEARING DEFENDANTS CHRISTIAN BOVAY, PETER KURER, AND RAOUL WEIL TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>**15 U.S.C. § 78u-4(b)(3)(B)**<br><br>Date:  July 26, 2010<br>Time:  10:00 a.m.<br>Dept:  10D<br>Judge: Honorable Andrew J. Guilford |

/ / /

/ / /

-i-

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT ..................................................................................... 1

II. RELEVANT FACTS ................................................................................................... 1

III. LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS ......................... 3

IV. JURISDICTION IS PROPER AS TO THESE UBS EXECUTIVES ........................... 3

    A.   There is General Jurisdiction Over Defendants ................................................. 5

    B.   There is Specific Jurisdiction Over Each UBS Executive ................................ 8

           1.   Defendants Purposefully Availed Themselves of the Benefits of Conducting
               Business in California ............................................................................. 8

               a.   *Personal Jurisdiction against Bovay* .............................................. 11

               b.   *Personal Jurisdiction against Kurer* .............................................. 11

               c.   *Personal Jurisdiction against Weil* ................................................ 13

           2.   Plaintiff's claims arise out of Defendants' contacts with California ...... 14

           3.   Asserting jurisdiction over Defendants is reasonable ............................ 15

V. THE TAC HAS STATED SUFFICIENT CLAIMS AGAINST DEFENDANTS ............ 16

    A.   Plaintiffs' Fraud Claims are Alleged with Sufficient Particularity ................. 17

    B.   Plaintiffs' Have Sufficiently Alleged their RICO Claims Against Defendants ................. 19

VI.    BOVAY WAS PROPERLY SERVED AND SHOULD NOT BE ABLE TO ABUSE THE
SYSTEM TO DELAY PROSECUTION ....................................................................... 20

VII. CONCLUSION ......................................................................................................... 24

1

# TABLE OF AUTHORITIES

2

Cases

3

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, at 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)...........8

4

*Butcher's Union Local 498 v. SDC Investments, Inc.,* 788 F.2d 535, 538-539 (9th Cir. 1986)..................5

5

*Calder v. Jones*, 465 U.S. 783, 789 (U.S. 1984) ......................................................................................4, 9

6

*Cassiar Mining Corp. v. Superior Court*, 66 Cal. App. 4th 550, 557 (Cal. App. 4th Dist. 1998) ............15

7

*Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ............................................3

8

*Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)...............3, 5

9

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002) .............8

10

*Evans v. Department of Motor Vehicles*, 21 Cal. App. 4th 958, 967 (Cal. App. 3d Dist. 1994)..............21

11

*Facebook, Inc. v. ConnectU LLC*, 2007 U.S. Dist. LEXIS 61962 (N.D. Cal. Aug. 13, 2007) ................10

12

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).............................................................4

13

*j2 Global Communs., Inc. v. Blue Jay, Inc.*, 2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009)......4, 9

14

*Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004) ...............................................................................23

15

*Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540-541 (S.D.N.Y. 1965)...............................................21

16

*McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957) ..............................................................4

17

*Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 716 (Cal. App. 2d Dist. 1985) ...............................4, 12

18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950) ...............................................21

19

*NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) ..........................................................3

20

*Perkins v. Benguet Consolidated Mining Co., supra*, 342 U.S. at 446-47, 72 S. Ct. 413 ...........................5

21

*Pinker v Roche Holding Ltd.*, 292 F.3d 361, 371-2 (3d Cir.2002)........................................................6, 8

22

*Republic International Corp. v. Amco Engineers, Inc., supra*, 516 F.2d at 167. .......................................5

23

*Robbins v. Hometown Buffet*, 1995 U.S. Dist. LEXIS 17870 (S.D. Cal. Mar. 15, 1995) ........................18

24

*Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995).........................................................................15

25

*SEC v. Ross*, 504 F.3d 1130, 1139-1140 (9th Cir. 2007) .......................................................................5

26

*SEC v. Yuen*, 221 F.R.D. 631, 635 (C.D. Cal. 2004).............................................................................17

27

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) .........................................................19

28

OPPOSITION TO COLLECTIVE MOTIONS TO DISMISS
BY BOVAY, WEIL, AND KURER

1   *Sher v Johnson*, 911 F.2d 1357, 1363-1364 (9th Cir. 1990) .............................................4

2   *Szynalski v. Superior Court*, 172 Cal. App. 4th 1 (Cal. App. 2d Dist. 2009) .......................4

3   *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 113 (Cal. App. 1st Dist. 1990) .....................9, 11

4   *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1090 (1st Cir. 1992) ....8

5   *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 463 (Cal. 1996) ......................................14

6   *Walter v. Superior Court*, 178 Cal. App. 3d 677, 682 (Cal. App. 2d Dist. 1986) .....................................13

7   *Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*, 1982 U.S. Dist. LEXIS 17556 (N.D.

8   Cal. Oct. 4, 1982) ....................................................................................................................16

9   *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir. 1977) ................................5

10  *Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1074 (C.D. Cal. 2004) ....................................16

11  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)

12  .............................................................................................................................................8

13  *Wyle Lab. v. Lewis Mach. Co.*, 1994 U.S. App. LEXIS 20227 (9th Cir. Cal. 1994) ...............................14

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO COLLECTIVE MOTIONS TO DISMISS
BY BOVAY, WEIL, AND KURER

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

The collective motion of Christian Bovay, Peter Kurer and Raoul Weil (hereinafter collectively "the UBS Executives" or "Defendants") falls severely short of overcoming its burden to defeat jurisdiction. For eight years, the UBS Executives were direct supervisors and superiors to Bradley Birkenfeld ("Birkenfeld"), and individually, each played a role in abusing and misappropriating Plaintiffs' funds in an effort to perpetuate hefty profits for as long as they could get away with it.

These UBS Executives try to assert that they were nothing more than mere employees of UBS, AG, a ludicrous proposition considering that they were some of the highest ranking officials at UBS, responsible for implementing and carrying out the wrongdoing alleged. As co-conspirators in a grander scheme, the UBS Executives cannot deny that Plaintiffs have adequately pled their claims to justify jurisdiction in the instant Court. Even without application of the co-conspiracy theory, on the UBS Executives' own facts, there is a sufficient basis for jurisdiction.

Moreover, contrary to the very minimal, and even factually incorrect, arguments presented by The UBS Executives, each of the Claims for Relief has been sufficiently pled to survive the instant motion. The UBS Executives attempt to set themselves apart from their co-conspirators by arguing they were mere employees despite Plaintiffs' allegations –and their own admissions in public-- that they were key players providing the know-how and directives to which subordinates at UBS, i.e. Birkenfeld, followed. The UBS Executives are seeking the Court's assistance in completing the final step of their well-orchestrated plan by seeking removal as "non-participants" of the greedy scheme. For the reasons argued below, the Court should deny these Defendants' collective motion in its entirety.

## II.    RELEVANT FACTS

This case arises out of multiple, well-orchestrated schemes by numerous parties to use, misuse, and abuse the assets of Plaintiffs Igor M. Olenicoff and Olen Properties

1   Corp. in Newport Beach, California, ("Plaintiffs"), and defraud Plaintiffs of millions of

2   dollars all for their own personal benefit and financial gain.

3   　　　　The instant motion pertains to The UBS Executives, officers and directors of

4   UBS.  These UBS Executives regularly met, or caused others to meet, with Olenicoff,

5   also sending or hand-delivering statements to Plaintiffs at their Orange County,

6   California location during one of many regular visits to Plaintiffs in California while

7   concealing UBS's scheme and Plaintiffs' tax liabilities.  (TAC, ¶ 65 and 76)  Beginning

8   in 2003, UBS had been permitting its employees to purchase bogus securities known as

9   "pump and dumps" from several brokerage firms, obtain finder's fees for doing so, all

10  while unlicensed and unchecked by UBS's own compliance department.  (*Id.*, ¶¶ 79, 91).

11  　　　　Presently, over the past 18 months, UBS has gone from denying any wrongdoing,

12  to openly admitting that it schemed to defraud the IRS by creating entities for U.S.

13  customers to avoid taxes. (TAC ¶ 91)  Its officers and directors, including the UBS

14  Executives, have either been indicted or otherwise removed with additional admissions

15  being revealed every few months.  What UBS has yet to admit is that it manipulated

16  many of its U.S. customers by advising them that UBS would ensure privacy and

17  minimize tax exposure in IRS-approved and legal formats, and that it intentionally

18  allowed its bankers to run amok with said customers' accounts in a serious breach of its

19  and their respective fiduciary duties.

20  　　　　Because this scheme extends beyond the IRS and to many U.S. customers, it is

21  imperative that these UBS Executives be kept in the instant case for the evidence to be

22  divulged as it pertains to Plaintiffs and third party customers whose testimony will be

23  used as evidence.  Indeed, as alleged in the TAC, these Executives themselves undertook

24  to devise the scheme against Plaintiffs and other U.S. customers, trained UBS employees

25  to conduct the scheme, supervised the covert operation of bankers to troll for innocent

26  victims in the U.S. to enact the scheme, and were the expert authorities on the best

27  banking in the world to whom these victims were referred to bolster the credibility of

28  said scheme.  Without these UBS Executives, the entire operation would have failed.  As

1    such, they are directly responsible and liable for the damages complained of by

2    Plaintiffs.

3        Based on the foregoing, and as argued below, the UBS Executives' collective

4    motion should be denied in its entirety as each of these Defendants played a significant

5    role as orchestrators of the entire conspiracy and scheme alleged in the TAC.  Likewise,

6    their actions are intertwined with all of their co-conspirators in the various TAC claims.

7    **III.    LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS.**

8        A motion to dismiss will be denied unless it appears that the plaintiff can prove no

9    set of facts which would entitle him or her to relief.  *Conley v. Gibson*, (1957) 355 U.S.

10   41, 45-46. All material allegations in the complaint will be taken as true and construed in

11   the light most favorable to the plaintiff.  *NL Industries, Inc. v. Kaplan*, 792 F.2d 896,

12   898 (9th Cir. 1986).  As explained below, facts exist and have been pled to show that

13   Plaintiffs are entitled to relief from Defendants.

14   **IV.    JURISDICTION IS PROPER AS TO THESE UBS EXECUTIVES**

15       Defendants argue that this court lacks personal jurisdiction over them.  They also

16   argue that their self-serving affidavits, stating that they don't have "minimum contacts"

17   prevent the court from assuming the truth of the matters alleged in the TAC.  In reality,

18   affidavits and outside evidence should not be considered to defeat jurisdiction and the

19   complaint need only "demonstrate facts which support a finding of jurisdiction in order

20   to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc.*,

21   557 F.2d 1280, 1285 (9th Cir. 1977).

22       California courts may exercise jurisdiction over nonresidents on any basis not

23   inconsistent with the Constitution of the State of California or of the United States.

24   Code Civ. Proc., § 410.10.  Section 410.10 manifests an intent to exercise the broadest

25   possible jurisdiction, limited only by constitutional considerations. The United States

26   Constitution permits a state to exercise jurisdiction over a nonresident defendant if the

27   defendant has sufficient minimum contacts with the forum such that maintenance of

28   the suit does not offend traditional notions of fair play and substantial justice.

1    *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *See also*, *Szynalski v.*
2    *Superior Court*, 172 Cal. App. 4th 1 (Cal. App. 2d Dist. 2009).

3            When jurisdiction is challenged by a nonresident defendant, the burden of proof
4    is upon the plaintiff to demonstrate that minimum contacts exist between defendant
5    and the forum state to justify imposition of personal jurisdiction. The plaintiff has the
6    right to conduct discovery with regard to the issue of jurisdiction to develop the facts
7    necessary to sustain this burden. <u>But the pleader has no burden of proving the truth of</u>
8    <u>the allegations constituting the causes of action in order to justify the exercise of</u>
9    <u>jurisdiction over nonresident parties</u>. The plaintiff need only present facts
10   demonstrating that the conduct of defendants related to the pleaded causes is such as to
11   constitute constitutionally cognizable "minimum contacts." *McGee v. International*
12   *Life Ins. Co.*, 355 U.S. 220, 223 (1957); *Sher v Johnson*, 911 F.2d 1357, 1363-1364 (9th
13   Cir. 1990).); *Mihlon v. Superior Court*, 169 Cal. App. 3d 703 (Cal. App. 2d Dist. 1985)
14   (emphasis added).

15           While it is correct that Defendants' individual contacts with California are not to
16   be judged according to their employer's activities there, and each Defendants' contacts
17   with the forum state must be assessed individually, this does not shield the UBS
18   Executives from personal liability because said Defendants are "primary participants in
19   an alleged wrongdoing intentionally directed at a California resident…jurisdiction over
20   them is proper on that basis." *Calder v. Jones*, 465 U.S. 783, 789 (U.S. 1984). As
21   officers and directors, the acts of the individual employees, *and their inferiors*, are
22   sufficient upon which to establish personal jurisdiction over Defendants. *j2 Global*
23   *Communs., Inc. v. Blue Jay, Inc.*, 2009 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 5, 2009)
24   (emphasis added). As established in the declarations of Kurer, Bovay, and Weil, each
25   were of the highest ranking officials in UBS AG, each superior to Bradley Birkenfeld.
26   (TAC, ¶ 67; *See* Declaration of Bovay, ¶ 4; Declaration of ¶ 3; Declaration of Kurer
27   ¶3). Nothing in each respective Defendants' declarations establishes the contrary.
28   / / /

1  Moreover, both Weil and Bovay were directly involved with UBS's Wealth

2  Management program which targeted, and was carried out throughout, the U.S.  (Court

3  Doc # 215-2; TAC, ¶¶ 63, 65, 67, 68.)

4  When taking the allegations of the complaint, combined with Federal law,

5  Plaintiffs have made a *prima facie* showing of jurisdiction sufficient to defeat

6  Defendants' Motion to Dismiss.

## A.    There is General Jurisdiction Over Defendants

8  A defendant that has substantial, continuous, and systematic contacts with the

9  forum state is subject to general jurisdiction in the forum.  *See, Data Disc, Inc, supra,*

10  557 F.2d 1280.  If the contacts are found to be substantial, continuous and systematic,

11  "there is a sufficient relationship between the defendant and the state to support

12  jurisdiction even if the cause of action is unrelated to the defendant's forum activities.

13  (*Id., citing Perkins v. Benguet Consolidated Mining Co., supra,* 342 U.S. at 446-47, 72

14  S. Ct. 413; *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 413 (9th Cir.

15  1977); and *Republic International Corp. v. Amco Engineers, Inc., supra,* 516 F.2d at

16  167.)

17  It has been held that "targeting and initiating an ongoing business relationship

18  evinces the intent to avail oneself of the benefits of the forum state, including

19  participation in the market and access to its courts." *See, Forum Fin. Group v. President*

20  *& Fellows of Harvard Coll.,* 173 F. Supp. 2d 72, 90 (D. Me. 2001)

21  Additionally, with respect to Plaintiffs' RICO action (Counts XI and XII),

22  Defendants need only have sufficient contacts in the United States, not any particular

23  state, to establish general jurisdiction.  *See SEC v. Ross,* 504 F.3d 1130, 1139-1140 (9th

24  Cir. 2007); *see also Butcher's Union Local 498 v. SDC Investments, Inc.,* 788 F.2d 535,

25  538-539 (9th Cir. 1986).)

26  / / /

27  / / /

28  / / /

-5-

As pled in the TAC, Defendants actively sought the investment by U.S. Citizens for the following purposes and in the following manner:

1. "Wealth Management" for wealthy U.S. citizens offering services to maintain privacy and secrecy notwithstanding the QI Agreement (TAC ¶ 63);

2. Instructing and ordering subordinate bankers to travel to the U.S., misrepresent their purpose to U.S. authorities, and troll for wealthy investors at various dinners, seminars, shows, etc.  (TAC ¶ 65);

3. Conducting the aforementioned activities notwithstanding their full knowledge that UBS AG's executives and agents lacked proper licensure to legally manage U.S. customers' accounts (TAC ¶¶ 66, 76 and 79);

4. Sending to Plaintiffs, in California, authorizations for creations of companies and trusts (TAC ¶¶ 73 and 76);

5. Causing Birkenfeld to hand-deliver UBS statements to Plaintiffs at their Orange County, California location (TAC ¶ 77);

6. Regularly contacting and meeting with Plaintiffs, which includes Bovay specifically and in addition to Birkenfeld (TAC ¶ 89); and

7. The purchasing of bogus securities known as "pump and dumps," obtaining finder's fees for doing so, all while unlicensed and unchecked by UBS's own compliance department (TAC ¶ 101).

Courts have held that this type of activity, aimed at the U. S. securities market, can be sufficient to establish the requisite contacts for jurisdiction. *See, Pinker v Roche Holding Ltd.,* 292 F.3d 361, 371-2 (3d Cir.2002).

Moreover, and as pled, in or around November 6, 2008, the Department of Justice ("DOJ") filed an indictment specifically against Defendant Weil for his active role in the aforementioned activities directed into the U.S. (TAC ¶ 67).[1]  This includes a reference to all executives, managers, "desk heads," and bankers, which include Bovay and Kurer.

---

[1] Previously filed as Doc # 215-2

OPPOSITION TO COLLECTIVE MOTIONS TO DISMISS
BY BOVAY, WEIL, AND KURER

1  In fact, Plaintiffs have provided detail of UBS' admissions through the date of the

2  TAC's filing which specifically reference Weil and Kurer and their activities conducted

3  in the U.S. during the relevant time periods (TAC ¶ 91).[2]

4       Based on the foregoing, Plaintiffs have properly pled facts to establish personal

5  jurisdiction over the UBS Executives and their Motion to Dismiss should be denied.

---

[2]    The following is a brief chronology of events and admissions by the UBS Executives and/or UBS Officers:

a.    In November 2008, the U.S. filed an indictment against Weil further outlining Executives, Managers, Desk Heads, and Bankers as knowing participants in the scheme to defraud the IRS of taxes due by its customers. Attached hereto as **Exhibit "A"** is a true and correct copy of the Weil Indictment;

b.    On February 18, 2009, UBS and the U.S. entered a Deferred Prosecution Agreement ("DPA") in which UBS admitted, among other things, that beginning in 2000 and continuing until 2007 it had "participated in a scheme to defraud the United States and its agency, the IRS by actively assisting or otherwise facilitating a number of United States individual taxpayers in establishing accounts at UBS in a manner designed to conceal the United States taxpayers' ownership or beneficial interest in these accounts." Attached hereto as **Exhibit "B"** is a true and correct copy of said DPA, including Exhibit C to the DPA;

c.    On or about February 18, 2009, UBS's acting Chairman, and former General Counsel during the 2000 – 2007 period, Peter Kurer publicly stated that "UBS sincerely regrets the compliance failures in its U.S. cross-border business that have been identified by the various government investigations in Switzerland and the U.S., as well as our own internal review. We accept full responsibility for these improper activities." Marcel Rohner, group chief executive of UBS AG added, "it is apparent that as an organization we made mistakes and that our control systems were inadequate." Attached hereto as **Exhibit "C"** is a true and correct copy of the NY Times article quoting Messrs. Kurer and Rohner;

d.    On February 18, 2009 the Securities Exchange Commission ("SEC") filed a complaint against UBS for acting as an unregistered broker-dealer and investment adviser to thousands of U.S. cross-border clients. Attached hereto as **Exhibit "D"** is a true and correct copy of said complaint.

e.    On February 19, 2009, the IRS filed a civil action against UBS to enforce a "John Doe" summons seeking names of UBS's U.S. customers. Attached hereto as **Exhibit "E"** are relevant portions of said summons;

f.    On March 4, 2009, at a U.S. Senate Subcommittee hearing, UBS's Chief Financial Officer, Mark Branson, admitted UBS AG was intent on keeping wealthy investors with UBS while scheming to defraud the IRS of taxes. Attached hereto as **Exhibit "F"** is a true and correct copy of the relevant portion of the transcript of the Senate Hearing Dated March 4, 2009 re IRS Investigation of UBS, at 1:43:08; Indictment of Raoul Weil, Pp. 4-7, Par(s). 11-24);

g.    Between April and July 2009, UBS and the DOJ, as well as U.S. and Swiss politicians, wrangled over the privacy/secrecy issues as trial approaches in July 2009;

h.    On June 30, 2009, the IRS filed a Memorandum of Law in Support of Petition to Enforce "John Doe" Summons which details UBS's violations, its acknowledgment that it would be subject to U.S. jurisdiction and the scheme as provided in the instant Complaint. Attached hereto as **Exhibit "G"** is a true and correct copy of the relevant portions of said Memorandum;

i.    On July 12, 2009, the U.S. District Court in Miami suspended the July 13, 2009 hearing on the Motion to Enforce for 30 days, anticipating a settlement between UBS and the IRS/DOJ;

j.    On August 12, 2009, the U.S. and UBS reached an agreement in principle the terms of which include the revelation of approximately 4,450 UBS customer names.

    Additionally, on or about July 29, 2009, it was revealed that documents exist to show that UBS tried to entice wealthy Latin Americans to use a program designed to result in tax evasion problems for these Latin Americans, some of whom were taxable in the U.S. The "Referral Program," cited to a "success model" showing $200 million to be moved to Switzerland, referring to Olenicoff's account.

    Further, on August 21, 2009, Birkenfeld was sentenced to 40 months in prison for his participation in the scheme that cost the IRS billions in tax losses. Notably, this was a reduction in the 60-month term he would have received had he not admitted to his illegal conduct and given the DOJ information that corroborates the facts and charges against UBS AG by the IRS, DOJ, as well as Plaintiffs in this complaint.

-7-

**B.     There is Specific Jurisdiction Over Each UBS Executive.**

To establish specific jurisdiction over a party, the following factors must be considered:

"First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1090 (1st Cir. 1992).  The reasonableness test requires an analysis of (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, at 477, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

**1.     Defendants Purposefully Availed Themselves of the Benefits of Conducting Business in California**

Purposeful availment can be met by merely initiating a transaction via mail or telephone is sufficient to establish jurisdiction. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 57 (1st Cir. 2002).  A key question is whether the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).  Also, it is well settled that "defendants may not defeat jurisdiction merely by showing that they never physically entered the forum." *Burger King, supra*, at 476.  Courts have found that merely taking advantage of the U. S. Securities market can be sufficient to establish the necessary minimum contacts for jurisdiction. *Pinker, supra*, 292 F.3d 361.

1    Although corporate officers and directors cannot ordinarily be held personally

2    liable for the acts or obligations of their corporation, they are liable if they directly

3    authorize or actively participate in wrongful or tortious conduct. *Taylor-Rush v.*

4    *Multitech Corp.*, 217 Cal. App. 3d 103 (Cal. App. 1st Dist. 1990). Indeed, an

5    employee, officer, or director may be subject to personal jurisdiction where the

6    individual is a primary participant in the alleged wrongdoing, i.e., where the individual

7    had control of, and direct participation in the alleged activities. *j2 Global Communs.,*

8    *Inc. v. Blue Jay, Inc.*, *supra* at 25. Further, by directing third parties to take actions

9    directed at a resident in California, a corporate director purposefully avails himself of

10   the privilege of conducting activities in that forum. *Id.*

11      The UBS Executives cite, exhaustively, the case of *Calder v. Jones*, 465 U.S.

12   783 (U.S. 1984), for the proposition that, since they did not purposefully direct their

13   conduct *at* California, they did not purposefully avail themselves of the benefits of

14   California and are thus not subject to jurisdiction under the so-called "effects test." A

15   curious citation considering that the court in *Calder* held that non-resident defendants

16   could be hailed into court in California despite the fact that their alleged acts occurred

17   out-of-state. To show purposeful direction, Plaintiffs need only show that Defendants

18   (1) committed an intentional act; (2) expressly aimed at California; (3) which caused

19   harm in, and which the Defendant knows is likely to be suffered in the forum state. *Id.*

20   The Court held that the defendants intentional, and allegedly tortious, actions were

21   aimed at California because defendants knew that their actions would have an impact

22   upon the plaintiff, and they knew that the brunt of that injury would be felt by plaintiff

23   in the State in which she lived and worked, California. Because of this, the court held

24   that the defendants must "reasonably anticipate being haled into court [in California]"

25   to answer for their wrongs. *Id.* at 789. The plaintiff, injured in California need not go

26   to the defendant's place of residence to seek redress since they knowingly caused the

27   injury in California. *Id.*

28   / / /

-9 -

OPPOSITION TO COLLECTIVE MOTIONS TO DISMISS
BY BOVAY, WEIL, AND KURER

As previously asserted, above, the TAC alleges that these UBS Executives "authorized, encouraged, and instructed UBS employees to regularly travel to the U.S. to solicit new clients while conducting banking for existing U.S. clients." (TAC, ¶ 65). These travels necessarily included Plaintiff, and necessarily California. Further, said Defendants were "aware of, encouraged, directed, authorized, and commanded" the wrongful acts alleged therein. (TAC, ¶65). As such, and as pled in ¶¶ 63, 65, 66, 73, 76, 77, 79, 89, 91, and 101, these UBS Executives' roles were far more reaching than mere passive observers; they were primary participants in the alleged wrongdoing. Defendants, and each of them were driving forces in instructing and implementing the fraudulent activities alleged. Admitting that Plaintiffs' allegations are sufficient, Defendants have not attempted to allege that its acts were not intentional. The first prong of *Calder* is easily satisfied.

Subsequent cases to *Calder* have held that the "expressly aimed" prong of the effects test is met when the Defendant knows that Plaintiff lives in the specific state. See *Facebook, Inc. v. ConnectU LLC*, 2007 U.S. Dist. LEXIS 61962 (N.D. Cal. Aug. 13, 2007) ("express aiming...is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state."). As established in the TAC, the UBS Executives knew Plaintiffs to be residents of California[3]. There is nothing in either of the declarations of Weil, Kurer or Bovay that allege the contrary[4]. The second prong of *Calder* is satisfied, and undisputed by Defendants.

As in the present matter, despite the fact that these Defendants may or may not have committed the specific acts in California, they knew or at the very least should have known that their actions against Plaintiffs, California residents, would have an impact and would be felt in the state in which Plaintiffs live and work: California. Defendants cannot shield themselves from liability because of a lack of evidence of

---

[3] Defendants directed UBS employees to meet with Plaintiffs in California (see TAC ¶65) and sent correspondence to Plaintiffs in California (see TAC ¶73, 76, 77, 79).

[4] Indeed, Bovay admits in his declaration that he knew, or at least should have know, Plaintiffs to be residents of California. (See Declaration of Bovay, ¶5).                                    -10 -

"physical presence" in California. *Id*. Their actions, as alleged in the TAC, have already cast rather large footprints for them.

### a.   *Personal Jurisdiction against Bovay*

In addition to his roles and activities as a corporate officer, Bovay's individual acts also submit him to personal jurisdiction in California.  As alleged in the TAC, Defendant Bovay met with Plaintiff, *in California*, to solicit Plaintiff's business.  (See TAC, ¶ 89).  Further, Bovay's interactions with Plaintiffs were for the purpose of establishing a business relationship between Plaintiffs and UBS, AG.  (*Id*., ¶ 57). Bovay also corresponded directly with Plaintiffs, promising Plaintiffs that their funds were producing terrific results (*Id*., ¶ 70); and promising that the investments were absolutely safe, conservative, low-risk liquid equities (*Id*., ¶ 72).  In other words, in addition to purposefully availing himself of California's laws by personally meeting with Plaintiffs in California to discuss business, Bovay also made numerous misrepresentations to Plaintiffs in a host of separate correspondences directed to Plaintiffs in California.  These conversations and correspondences form the basis for many of Plaintiff's claims against Bovay.

California thus has a "special interest" in exercising jurisdiction over Bovay. See *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 113 (Cal. App. 1st Dist. 1990) ("A state has a special interest in exercising jurisdiction over those who commit tortious acts within its territory…Jurisdiction is proper over a nonresident defendant who, while personally present in California, makes representations or nondisclosures to the plaintiff which constitute the gravamen of the action.")

### b.   *Personal Jurisdiction against Kurer*

It is alleged that Kurer joined UBS AG in 2001 when he was appointed as Group General Counsel (Defendants Motion to Dismiss, page 4, lines 13-14).  It is also alleged throughout the TAC, that Kurer carried-out and knew of the wrongful nature of UBS' acts.  (*see* TAC ¶¶ 91, 120-128; 171-198).

/ / /

As corporate counsel, Kurer is not entitled to the same "official capacity" shield from personal jurisdiction as are corporate officers and directors. *Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 716 (Cal. App. 2d Dist. 1985)  Because a corporation is a separate legal entity that necessarily must have persons act for it, persons functioning in their official capacities as officers and directors may not reasonably be subjected to personal jurisdiction for their actions *qua* the corporation. *Id.*  This rationale, however, does not extend to an attorney serving a corporation as corporate counsel because that counsel merely provides legal counsel and services, and does not "speak for" or act *qua* the corporation in the same manner that officers and directors do.  *Id.*

Corporate counsel may advise the corporation (its officers and directors) as to the legal consequences of business conduct, but it is the corporation, through its officers and directors, that acts in its own capacity upon such advice.  Similarly, corporate counsel might draft contracts and correspondence for the corporation, but the execution of those contracts and corporate authorization or ratification must be performed by appropriate corporate officers or directors. In short, counsel for a corporation acts for or on behalf of the corporation only in the same manner as counsel would act for or on behalf of a client who is an individual.  *Id.*

The capacity of corporate counsel, whether in-house or independent counsel, is analogous to that of accountants providing services as professional employees of or independent contractors for the corporation. It is not subject to serious dispute that if accountants provide fraudulent financial documents on behalf of their corporate client, knowing or reasonably foreseeing direct injury to residents of another state, the accountants should be subjected to personal jurisdiction as joint tortfeasors.  *Id.*

It follows that corporate counsel should be treated for purposes of personal jurisdiction in the same manner as employees of or independent contractors for the corporation rather than as officers or directors.  "An intentionally tortious act of the corporation would confer personal jurisdiction over participating corporate counsel *where knowledge of the wrongful nature of the corporation's acts is alleged.*"  *Id.*

-12-

1  (emphasis added).  This conclusion is consistent with the consideration that there is no

2  good reason for treating counsel advising corporations differently than counsel

3  advising individual clients for purposes of personal jurisdiction.  *Id.*

4       Here, Kurer cannot deny he had knowledge of Plaintiffs' allegations as he was

5  personally involved in covering up of these activities upon receiving what is now

6  commonly known as the "Birkenfeld Whistleblower" letter. (TAC ¶ 85.)  Despite this

7  letter, Kurer, as General Counsel, took no steps to protect Plaintiffs' privacy and/or to

8  seek rectification regarding UBS AG's improper handling of Plaintiffs' accounts,

9  including allowing Plaintiffs' personal information to be delivered by UBS to the DOJ

10  in violation of the Swiss Law they have been hiding behind for the past 18 months as

11  UBS avoids following through with its agreement with the IRS.[5]

12       Based on the foregoing, by taking the actions alleged in the TAC, personal

13  jurisdiction is conferred upon Kurer.

14      *c.*   *Personal Jurisdiction against Weil*

15       In cases where the defendant does business, i.e., conducts activities of sufficient

16  intensity to amount to the doing of business in the state, the state may exercise

17  jurisdiction.  *Walter v. Superior Court*, 178 Cal. App. 3d 677, 682 (Cal. App. 2d Dist.

18  1986).  Specific jurisdiction exists over an out-of-state defendant if the defendant has

19  "purposefully directed" his activities at residents of the forum state and the litigation

20  arises from injuries that arise out of or relate to those activities.  As stated in

21  Defendants Motion, the court has developed a three-part test for determining whether

22  specific jurisdiction exists over a nonresident defendant: (1) whether the defendant has

23  purposefully availed himself of the privilege of conducting activities in the forum state;

24  (2) whether the claim arises out of the forum-related activities; and (3) whether the

25  exercise of jurisdiction is reasonable.  Once the plaintiff establishes that the defendants

26  "purposefully availed" themselves of the forum state, there is a presumption that the

27

28

---

[5] While Plaintiffs are not suing UBS for any breach of privacy, it is important to note the convenient inconsistency with which UBS and its executives and officers have conducted themselves depending on how it suits them.

exercise of jurisdiction over such defendants is reasonable. *Wyle Lab. v. Lewis Mach. Co.*, 1994 U.S. App. LEXIS 20227 (9th Cir. Cal. 1994).

As established in Weil's declaration, he has traveled to California for UBS-related work. (Declaration of Raoul Weil, ¶ 8). Defendants argue extensively that Weil did not see or talk to Plaintiffs while traveling for UBS-related trips in California, and thus he should not be subject to jurisdiction based on these travels. (Motion to Dismiss, page 8, lines 5-7). However, as more fully described below, despite Defendants' attempts to dissuade otherwise, it is immaterial whether or not Weil's UBS-related travel specifically involved Plaintiffs. Rather, the mere fact that said travel was in California and was for UBS-related activities is sufficient for specific jurisdiction.

### 2.    Plaintiff's claims arise out of Defendants' contacts with California

The court in *Vons Companies, Inc. v. Seabest Foods, Inc.*, 14 Cal. 4th 434, 463 (Cal. 1996), expressly rejected the "but for" requirement stressed by Defendants. Indeed, the California Supreme Court stated as follows: "The United States Supreme Court long ago rejected the notion that personal jurisdiction might turn upon mechanical tests such as a proximate cause test." *Id.* The court stressed that the relevant standard was painted in "relatively broad terms" and formulated in the disjunctive: the cause of action either must "'arise out of' *or* be 'related to' the defendant's forum activity in order to warrant the exercise of specific jurisdiction. . . ." *Id.*

These UBS Executives actively sought the investment by U.S. Citizens into UBS's Wealth Management program in an effort to make an end-run around the 2001 Qualified Intermediary Agreement it signed with the IRS and continue to make billions of dollars from overseas investors. (¶¶ 60-65). Further, the relationship between Plaintiffs and the co-conspirators contemplated multiple interactions with Plaintiffs in Orange County, California. As is undisputed by Defendants' own declarations (*see* Dec. of Weil, ¶8; Dec. of Kurer ¶ 11; Dec. of Bovay ¶ 9), Defendants' travels in

-14-

1   California were for UBS-related activities.  As alleged in the TAC, these trips were set

2   up to perpetrate the fraud and other wrongdoings alleged (TAC, ¶65).  Whether or not

3   these trips were specifically for Plaintiffs' individual accounts is immaterial.  "The

4   defendant's forum activities need not be directed at the plaintiff in order to give rise to

5   specific jurisdiction. . . . [T]he nexus required to establish specific jurisdiction is

6   between the defendant, the forum, and the litigation [citation omitted]--not between the

7   plaintiff and the defendant. . . . [T]he relevant contacts are said to be with the forum,

8   because it is the defendant's choice to take advantage of opportunities that exist in the

9   forum that subjects it to jurisdiction."  *Cassiar Mining Corp. v. Superior Court*, 66 Cal.

10  App. 4th 550, 557 (Cal. App. 4th Dist. 1998).

11          Thus, the claims relate directly to Defendants and their co-conspirators'

12  activities in this in this forum.  As these alleged wrongdoings form the basis of many

13  of Plaintiffs' allegations against Defendants--and consequently UBS--and thus directly

14  relate to Defendants' activities in California, Defendants have "taken advantage of

15  opportunities that exist in the forum."  *Cassiar Mining, supra*, at 557.  Said actions

16  subjects them to jurisdiction.

17          **3.      Asserting jurisdiction over Defendants is reasonable**

18          With regard to the Plaintiffs' interest in this forum, "a plaintiff's choice of forum

19  must be accorded a degree of deference with respect to the issue of its own

20  convenience."  *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995).  Here, Plaintiffs

21  reside and office their headquarters in California.  The UBS Executives specifically,

22  through their scheme, pursued Plaintiffs in California for the purpose of obtaining

23  substantial benefit from Plaintiffs' investments.  In light of the allegations and the

24  numerous parties, combined with the extreme diversity in the locale of said parties,

25  Plaintiffs' choice of this forum should be given substantial deference as the proper

26  forum with regard to whether jurisdiction is reasonable as a matter of Federal law.

27  Indeed, the Court has already ruled as to proper jurisdiction and venue regarding all of

28  the other Defendants in this matter, including UBS AG (Mar. 16, 2010 Order.)

Next, California and the U.S. District Court have a greater interest in this matter by virtue of the fact that it is the laws of California and the United States that are at issue. It simply cannot be said that a court located on foreign soil is more familiar with or has a better understanding of California and U.S. law than this Court. Further, Plaintiffs are either U. S. citizens and/or California residents, such that this forum has a superior interest in promoting justice and in making sure Plaintiffs are protected.

Lastly, despite Defendants' claims that California is unreasonable, none of their reasons proffered suggest that jurisdiction in California would constitute a deprivation of due process. As such, they cannot overcome the presumption that jurisdiction is reasonable in California. *See Wolf Designs, Inc. v. DHR & Co.*, 322 F. Supp. 2d 1065, 1074 (C.D. Cal. 2004) ("unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."). Since (1) Defendants have purposefully availed themselves of conducting activities in California by specifically soliciting business and committing fraud within the state's borders; and (2) Plaintiffs' claims directly arise out of said activities; and (3) Defendants' have failed to overcome their burden that jurisdiction is so unreasonable as to constitute a deprivation of due process, there can be no doubt that the exercise of jurisdiction over Defendants is reasonable.

## V.   THE TAC HAS STATED SUFFICIENT CLAIMS AGAINST DEFENDANTS

A corporation can only act through its agents and employees. *Warehouse Restaurant, Inc. v. Customs House Restaurant, Inc.*, 1982 U.S. Dist. LEXIS 17556 (N.D. Cal. Oct. 4, 1982). Defendants' allegation that "Plaintiffs' TAC assumes the actions of UBS AG to be synonymous with the actions of each of at least ten different employees, including Bovay, Kurer and Weil, yet provides no support for that assumption" (Motion to Dismiss, page 16, lines 18-21), is an argument in mere semantics. UBS AG's actions must necessarily be synonymous with that of its agents and employees.

### A.    Plaintiffs' Fraud Claims are Alleged with Sufficient Particularity

Despite Defendants' unsubstantiated claims to the contrary, group pleading is a judicially-recognized method of pleading against corporate defendants.  In cases of corporate fraud where false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases or other "group-published information," it is reasonable to presume that these are the collective actions of the officers.  Under such circumstances, a plaintiff fulfills the particularity requirement of Fed. R. Civ. P. 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.  The group published information doctrine is an exception to the general rule stated in Fed. R. Civ. P. 9(b) that allegations of fraud must be pled with particularity.  The doctrine was developed to relieve plaintiffs the burden of pleading exactly which members of an organization were responsible for publications of the organization in those circumstances where their access to information was particularly limited.  *In re Interactive Network, Sec. Litig.*, 948 F. Supp. 917 (N.D. Cal. 1996); *SEC v. Yuen*, 221 F.R.D. 631, 635 (C.D. Cal. 2004).

The doctrine has been extended to cover not only officers but directors as well. The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud. *Id.; see also In re Silicon Graphics Sec Litig.,* 970 F. Supp. 746, 759 (N.D. Cal. 1997) ("Under the group pleading doctrine, in drafting a complaint, plaintiffs may rely on a presumption that statements in 'prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' are the collective work of those individuals with direct involvement in the day-to-day affairs of the company.").

As established throughout the TAC, the activities of Defendants, and each of them, include but are not limited to the following: devising the scheme and establishing written policies and guidelines to gain Plaintiffs' funds under the

fraudulent promise of lawful tax planning strategies (TAC, ¶ 63); making fraudulent
sales pitches regarding the legality of their programs (*Id.*, ¶ 64); authorizing,
encouraging, and instructing employees within UBS to travel to the U.S. to solicit
Plaintiffs (*Id.*, ¶ 65); training its wealth management executives how to convince
clients, including Plaintiffs, that its practices were legal (*Id.*, ¶ 65); knowing that their
executives and agents were not properly licensed to provide tax advice, manage funds
and/or solicit securities (*Id.*, ¶ 65); preparing false documentation and correspondence
advising Plaintiffs to submit improper IRS forms (*Id.*, ¶ 82); using Plaintiffs as a
"success model" to entice wealthy Latin Americans (*Id.*, ¶ 91); and encouraging
inferior employees to conceal from Plaintiffs the actual investments to which their
money was being invested (*Id.*, ¶ 121).  Plaintiffs may rely on the presumption that
UBS' group-published information, were the collective work of Defendants. *Robbins
v. Hometown Buffet*, 1995 U.S. Dist. LEXIS 17870 (S.D. Cal. Mar. 15, 1995)

      Plaintiffs may, but are not required to set forth how Defendants, specifically
contributed to the collective work.  The group publishing doctrine may apply to
defendant officers and directors *merely by virtue of their status in the corporation*, so
long as the complaint also makes an effort to allege, where possible, how the
defendants' status as officers or directors make them responsible for group published
information. *Id.* (emphasis added).  As established in each of Defendants Bovay,
Kurer and Weil's declarations, each were involved in the day-to-day activities of UBS,
and oversaw the alleged scheme(s).  Bovay, during the relevant times alleged in the
TAC, was an executive director of UBS, coordinator of the North American market.
(Declaration of Christian Bovay, ¶ 3).  As Executive Director, Bovay managed Bradley
Birkenfeld, Plaintiff's direct advisor at UBS.  (*Id.* ¶ 4).  During the relevant times
alleged in the TAC, Kurer was Group General Counsel. (Declaration of Peter Kurer, ¶
3).  In that capacity he served as the senior internal legal advisor to UBS AG.  In 2008,
Kurer was promoted to Chairman of the Board of Directors of UBS AG and held that
position until he was forced to step down from his position amidst the scandal

1  surrounding his involvement in UBS's scheme to defraud the United States.  (*Id.*).

2  During the relevant times alleged in the TAC, Weil was the Chief Executive Officer of

3  UBS' Global Wealth Management and Business Banking business group.  (Declaration

4  of Raoul Weil, ¶ 3).  As such, established by the very declarations of the Defendants,

5  each were some of the highest ranking corporate officers at UBS, with direct

6  involvement in the day-to-day affairs of the company, and direct involvement in

7  overseeing UBS' alleged wrongs.  As such, under the group publishing doctrine, this

8  Court must find that Plaintiff's fraud claims are alleged with sufficient particularity.

9      **B.    Plaintiffs' Have Sufficiently Alleged their RICO Claims Against**

10  **Defendants**

11      Defendants attempt to oversimplify Plaintiffs' detailed description of the scheme

12  and events.  Sufficient allegations exist that a pattern of conduct occurred.  "Continuity

13  is demonstrated if the illegal conduct poses a threat of continued criminal activity, such

14  as when the illegal conduct is 'a regular way of conducting defendant's ongoing

15  legitimate business." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992).

16      As alleged in the TAC, UBS participated in continued activity of, not only

17  defrauding the IRS, but defrauding each and every one of its customers through

18  improper transactions, permitting bribes and kickbacks, and charging fees outside

19  agreed-upon charges all for its own selfish gain and the gain of its co-conspirators.

20  Despite Defendants' allegations to the contrary, Plaintiffs have implicated Defendants in

21  these charges (TAC, ¶¶ 98-107, 192).  Plaintiffs' allegations have proven to be with

22  merit as a federal indictment was garnered against Weil for his role (TAC ¶ 91(a)), the

23  SEC filed a complaint against UBS on Feb. 18, 2009 (TAC ¶ 91(d), a March 4, 2009

24  U.S. Senate Subcommittee hearing was conducted to address the same bases for these

25  claims (TAC ¶ 91(f)) .

26      While Defendants attempt to argue that Plaintiffs insufficiently identify each of

27  these individual Defendants for their participation in the RICO-related conduct, the

28  aforementioned paragraphs cite to the "UBS Defendants" which are defined as all-

1    inclusive of UBS AG and the UBS executives, officers, and employees named therein

2    (TAC ¶ 19). Accordingly, Bovay, Weil and Kurer have all been adequately put on

3    notice of the claims against them in accordance with Fed.R.Civ.P. 8.

4    **VI.   BOVAY WAS PROPERLY SERVED AND SHOULD NOT BE ABLE TO**

5    **ABUSE THE SYSTEM TO DELAY PROSECUTION**

6          Federal Rule of Civil Procedure 4(f) provides that service upon individuals in a

7    foreign country may be accomplished:

8                 1.    by any internationally agreed means reasonably calculated to

9                 give notice, such as those means authorized by the Hague Convention

10                on the Service Abroad of Judicial and Extrajudicial Documents; or

11                2.    if there is no internationally agreed means of service or the

12                applicable international agreement allows other means of service,

13                provided that service is reasonably calculated to give notice:(A) in the

14                manner prescribed by the law of the foreign country for service in that

15                country in an action in any of its courts of general jurisdiction; or(B)

16                as directed by the foreign authority in response to a letter rogatory or

17                letter of request; or(C) unless prohibited by the law of the foreign

18                country, by(i) delivery to the individual personally of a copy of the

19                summons and the complaint; or(ii) any form of mail requiring a

20                signed receipt, to be addressed and dispatched by the clerk of the

21                court to the party to be served; or

22                3.    by other means not prohibited by international agreement as

23                may be directed by the court.

24          Where non-personal service is employed, the basic inquiry is whether the method

25   is reasonably calculated, under all the circumstances, to give actual notice to the party

26   whose interests are to be affected by the suit or proceeding, and to afford him an adequate

27   opportunity to be heard; and the practicalities in a given case are a factor in determining

28   whether constitutional requirements have been satisfied. *Evans v. Department of Motor*

*Vehicles*, 21 Cal. App. 4th 958, 967 (Cal. App. 3d Dist. 1994); *Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540-541 (S.D.N.Y. 1965).  Further, due process of law does not require actual notice, but only a method reasonably certain to accomplish that end. *Evans*, supra, at 967 (Cal. App. 3d Dist. 1994); *See, Levin*, supra, at 541. (mail service on counsel was reasonably calculated to notify foreign party of the lawsuit). *See also, Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950) ["Well-known and oft-repeated Supreme Court precedent states that notice of a legal proceeding satisfies due process even if not-actually received so long as 'notice is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"].

Defendant Bovay has not argued that he was without notice and, therefore, that his due process rights have somehow been violated.  Instead, he contends that actual notice is no substitute for proper service.  However, Bovay has been on notice of the lawsuit for over 18 months, asking Plaintiff to stipulate to his filing of an answer after UBS' motions to dismiss were heard.  Rule 4(i)(1)(E) provides for service tailored to the circumstances of the case before the court.

The following is a brief detail of the events and communications between Plaintiffs' counsel, William J. King, and Bovay's counsel, Kris Diulio regarding Bovay, Weil and Kurer:

      1.     On or about September 2009, Defendant Christian Bovay was served with the complaint (Court Doc# 129 [along with Doc #s 130 – 134 on the other UBS individual executives).  Thereafter, in or around January 2009, he was subsequently served via mail with the First Amended Complaint ("FAC").  (Declaration of William J. King ["King Dec."], Par. 3.)

      2.     On or about May 22, 2009, Mr. King engaged in telephone calls and email correspondence with counsel for UBS AG and the UBS Executives, Kris Diulio, regarding a stipulation tied to the Court's hearing of UBS AG's motion to dismiss.  Mr. Diulio expressed to Mr. King his desire not to burden the individual

-21-

1    defendants in the event the court ruled in UBS AG's favor and, thus, sought a stay

2    on responding to the complaint until such time as the Court ruled. (King Dec., Par.

3    4.)

4        3.    At no time did Mr. Diulio express to Mr. King that service on Mr.

5    Bovay was improper. In fact, the only fact he repeatedly stated was that, while he

6    could not confirm that his law firm, Gibson, Dunn & Crutcher, was actually

7    representing any of the UBS individuals (namely, Weil, Kurer and Bovay), that he

8    wanted to be informed of any efforts to serve any and all UBS AG employees.

9    (King Dec., Par. 5.) Mr. Diulio asserted that he did not believe Bovay was

10   employed by UBS AG at the time of service. *Id.* This is significant because Bovay

11   now takes the position that he was simply working in a different location. (Bovay's

12   Motion, Doc # 349, P. 15:12-14.)

13       4.    During this May 2009 exchange, Mr. King expressed his

14   disagreement with the spirit of the stipulation which was based on the Court's

15   ruling on the 2nd Amended Complaint ("SAC"), which the Court took completely

16   off calendar. However, in a display of professionalism and resolution for purposes

17   of not burdening the Court and all subject parties with time and fees, Mr. King

18   agreed to let the stipulation run until the Court ruled on TAC. (King Dec., Par. 6.)

19       5.    Thereafter, following a series of motion filings and scheduling

20   continuances, and the Court's ruling on the numerous motions to dismiss, Mr.

21   Diulio and Mr. King resumed their conversation regarding a briefing schedule for

22   the UBS Executives. (King Dec., Par. 7.) Again, Mr. Diulio never contested

23   service on Bovay. *Id.* In fact, the email exchange became somewhat heated

24   between Mr. King and Mr. Diulio as Mr. King accused him of game-playing. *Id.*

25       6.    On Page 2 of **Exhibit B**, at 4:05 p.m., Mr. King repeated his

26   frustration that Mr. Diulio was not being straightforward as to whether or not his

27   firm was representing the individuals. (King Dec., Par. 8.) Indeed, there was a

28   certain degree of irony in that he wanted to file stipulations pertaining to the UBS

-22-

individuals, but did not want to commit to actually representing them.  Mr. Diulio replied at 6:24 p.m., Page 2: sub (2), that "[Gibson Dunn] **(had already entered appearances on their behalf.[6])** *Id.*  Again, Mr. Diulio made no statement that he entered their appearance but objected to service on Bovay.  *Id.*

7.     While there is no case law to support the "stringing along" of counsel regarding contesting service, the evidence is sufficient that:

    a.     Bovay was served at UBS AG with both the Complaint and the Second Amended Complaint;

    b.     Bovay was given notice and able to respond as evidenced by, service at UBS AG's headquarters, the aforementioned communications between Bovay's attorney and me and said counsel's representation that he already entered Bovay's appearance.

    c.     The TAC was served on Bovay's counsel with no objection and with Bovay filing a motion to dismiss on the merits.

(King Dec., Par. 9.)

Based on the foregoing, and in accordance with Rule 4, Plaintiffs' service upon Bovay is, therefore, proper, and his motion to dismiss should be denied upon the basis that he has actual notice. *See Khan v. Ashcroft*, 374 F.3d 825, 828 (9th Cir. 2004) ["Actual notice is, however, sufficient to meet due process requirements."]

For Bovay to now attempt to slow the litigation down and require service at a different office, in a different language, and then file an answer at some point at least four months from now is a complete abuse of the process, displaying the very gamesmanship Mr. King was trying to avoid the year prior.  Bovay should not be rewarded for hiding the ball that he was in a different office when it is clear his due process rights have been met with respect to service of this action.

///

///

---

[6] On Page 4, Mr. Diulio indicates his firm is currently representing all three defendants, Bovay, Weil and Kurer.

## VII.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court deny the collective motions of Weil, Kurer, and Bovay to dismiss the TAC based on jurisdiction and/or alleged failures to state a claim.

Dated:  June 16, 2010                    **HORIZON LAW GROUP LLP**


By:   /s/  William J. King
    William J. King, Esq.
    William C. Hoggard, Esq.
    Attorneys for Plaintiffs IGOR OLENICOFF
    and OLEN PROPERTIES CORP.

Dated:  June 16, 2010


By:   /s/ Julie A. Ault
    Julie A. Ault, Esq.
    Attorney for Plaintiffs IGOR OLENICOFF
    and OLEN PROPERTIES CORP