# EXHIBIT G

# JULIE A. AULT
### ATTORNEY AT LAW

SEVEN CORPORATE PLAZA
NEWPORT BEACH, CA 92660
TELEPHONE: (949) 719-7212
FACSIMILE: (949) 719-7210

March 10, 2011

_**Via E-Mail Transmission**_

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412

RE:   _Igor Olenicoff and Olen Properties Corp. v. UBS AG, etc., et al._
Case No. SACV08-01029 AG (RNBx)

Dear Kristopher:

I write concerning the "rolling" production referenced in your letter of February 10, 2011. You will recall we had agreed to a list of search terms to be used by UBS, AG for a further search and production of documents. Having not heard from you in this regard, I believe a status from your end would be fruitful. Has your client conducted a further search and what documents, if any have been determined to exist? We look forward to your response.

Sincerely,

John Marshall

Cc:   _William J. King, Esq. (via e-mail)_
_Julie A. Ault, Esq. (via e-mail)_

# JULIE A. AULT
ATTORNEY AT LAW

SEVEN CORPORATE PLAZA
NEWPORT BEACH, CA 92660
TELEPHONE: (949) 719-7212
FACSIMILE: (949) 719-7210

March 15, 2011

***Via E-Mail Transmission***

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412

RE:    *Igor Olenicoff and Olen Properties Corp. v. UBS AG, etc., et al.*
       Case No. SACV08-01029 AG (RNBx)

Dear Kristopher:

I write to further meet and confer regarding UBS AG's responses and production to Plaintiff's First Request for Production of Documents. At the time of our initial meet and confer letter dated October 14, 2010 we had not yet received UBS AG's production. Thus, our discussion was limited to your objections. Having now reviewed the limited production it is time to move forward with a Rule 37 (See attached) meeting of counsel.

Therefore, the following demands remain at issue and will be the subject of our conference: 1-8, 14-19, 20-23, 25-28, 30-50, 51-53, 54-57, 58-60, 64, 69-70, 71-72, 73-75, 85-93, 94, 95-98, 99-104, 105-108, 109-115, 116-122, 124-125, 126-131, 134-135, 136-139, 155-160.

I would also require that you provide a privilege log as required under the Federal Rules of Civil Procedure (See FRCP 26). This I would require on or *before March 25, 2011.* I also propose we conduct the Rule 37 meeting of counsel either *March 22, 2011 or March 23, 2011.* Please confirm either date as soon as possible.

Sincerely,

John Marshall

Cc:    *William J. King, Esq. (via e-mail)*
       *Julie A. Ault, Esq. (via e-mail)*

# F.R.Civ.P. 37. Failure to Make Disclosure or Cooperate in Discovery; Sanctions

**L.R.37-1 Pre-Filing Conference of Counsel.**[1] Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P. 26-37, counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. It shall be the responsibility of counsel for the moving party to arrange for this conference. If both counsel are located within the same county of the Central District, the conference shall take place in person at the office of the moving party's counsel, unless the parties agree to meet someplace else. If both counsel are not located within the same county of the Central District, the conference may take place telephonically. Unless relieved by written order of the Court upon good cause shown, counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference. The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought.

**L.R. 37-2 Moving Papers** . If counsel are unable to settle their differences, they shall formulate a written stipulation. The stipulation shall be filed and served with the notice of motion.

**L.R. 37-2.1 Form of Joint Stipulation.** The stipulation must be set forth in one document signed by both counsel. The stipulation shall contain all issues in dispute and, with respect to each such issue, the contentions and points and authorities of each party. The stipulation shall not refer the Court to any other documents. For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation shall contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions as to that particular interrogatory, separately stated. If the allegations made in a prior filing are relevant, a copy of that prior filing should be attached as an exhibit. Exhibits to the stipulation may include declarations prepared in conformity with L.R. 7-7. The specification of the issues in dispute, and the parties' contentions and points and authorities with respect to such issues, may be preceded by an introductory statement from each party, provided that no party's introductory statement shall exceed three (3) pages in length. When a party states its contentions with respect to a particular issue, such party shall also state how it proposed to resolve the dispute over that issue at the conference of counsel.

Although the stipulation should present the disputed issues as concisely as the subject matter permits, the page limitation established by L.R. 11-6 does not apply to stipulations regarding discovery disputes. Any stipulation exceeding ten (10) pages in length, excluding exhibits, shall be accompanied by an indexed table of contents setting forth the headings or subheadings contained in the body thereof, but need not be accompanied by a table of authorities.

The title page of the stipulation must state the discovery cutoff date, the pretrial conference date, and the trial date. In addition, a copy of the order establishing the initial case schedule, as well as any amendments, must be attached to the stipulation or to a declaration filed in support of the motion.

**L.R. 37-2.2 Preparation of Joint Stipulation.**[2] Following the conference of counsel, counsel for the moving party shall personally deliver, e-mail or fax to counsel for the opposing party the moving party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the moving party's position. Unless the parties agree otherwise, within seven (7) days of receipt of the moving party's papers, counsel for the opposing party shall personally deliver, e-mail, or fax to counsel for the moving party the opposing party's portion of the stipulation, together with all declarations and exhibits to be offered in support of the opposing party's position. After the opposing party's papers are added to the stipulation by the moving party's counsel, the stipulation shall be provided to opposing counsel, who shall sign it (electronically or otherwise) and return it to counsel for the moving party, no later than the end of the next business day, so that it can be filed with the notice of motion.

**L.R. 37-2.3 Supplemental Memorandum** . After the Joint Stipulation is filed, each party may file a supplemental memorandum of law not later than fourteen (14) days prior to the hearing date. Unless otherwise ordered by the Court, a supplemental memorandum shall not exceed five (5) pages in length. No other separate memorandum of points and authorities shall be filed by either party in connection with the motion.

**L.R. 37-2.4 Failure to File Joint Stipulation** . The Court will not consider any discovery motion in the absence of a joint stipulation or a declaration from counsel for the moving party establishing that opposing counsel (a) failed to confer in a timely manner in accordance with L.R. 37-1; (b) failed to provide the opposing party's portion of the joint stipulation in a timely manner in accordance with L.R. 37-2.2; or (c) refused to sign and return the joint stipulation after the opposing party's portion was added. If such declaration accompanies the motion, then L.R. 6-1, 7-9 and 7-10 apply.

**L.R. 37-3 Hearing on Motion** . The motion may be noticed to be heard on the particular judge's regular Motion Day which shall be not earlier than twenty-one (21) days after the filing of the motion. Unless the Court in its discretion otherwise allows, no discovery motions shall be filed or heard on an ex parte basis, absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party.

**L.R. 37-4 Cooperation of Counsel - Sanctions** . The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions.

---

[1](37-1          amended,          effective          1/1/10)
[2](37-2.2 amended, effective 4/1/08; amended, effective 1/1/10)

# JULIE A. AULT

ATTORNEY AT LAW

SEVEN CORPORATE PLAZA
NEWPORT BEACH, CA 92660
TELEPHONE: (949) 719-7212
FACSIMILE: (949) 719-7210

March 28, 2011

_**Via E-Mail Transmission**_

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412

RE: _Igor Olenicoff and Olen Properties Corp. v. UBS AG, etc., et al._
Case No. SACV08-01029 AG (RNBx)

Dear Kristopher:

I write in response to your letter of March 18, 2011, which in turn was responsive to mine of March 10, and 11, 2011. I will proceed to address the topics in your correspondence in the order presented.

**Plaintiffs' Search for Responsive Documents**

My letter of March 10, 2011, as pertains to the reasonable and diligent search on the part of Plaintiffs, makes no assertion as stated in your letter. As previously stated my clients have made an appropriate search as required under the applicable rules which includes both hard copy review as well as review of computers. Thus, to answer your question, your assertions are incorrect and no admissions or suggestions have ever been made.

**UBS AG's Production of ESI**

We appreciate your response and look forward to a further production the week of April 4, 2011.

**Accounts Not Held In Plaintiffs' Names**

In short, we disagree that UBS AG can refuse to produce documents related to entities that it specifically set up for the benefit of Plaintiffs, and at the same time suggest that Plaintiffs have filed these claims without good faith belief in their merit. In essence, UBS AG is hiding behind the account structure it created to deny access to documents that are necessary, responsive, and relevant in this litigation. UBS AG was in control of the planning and implementation of these entities and knew well the purpose for

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
March 28, 2011
Page - 2 -

------------------------------------------

structuring them as they did. Further, UBS AG's course of conduct throughout the duration of the relationship was to communicate details and provide documents pertaining to the subject accounts with Plaintiffs directly. Such a course of conduct now estops UBS AG from denying the existence of the right to access to these documents.

Further, UBS AG has publically admitted to the implementation of this very account structure, thus further waiving any objections upon which you now base your client's refusal to respond. I urge you to reconsider this approach and produce all documents you indicate are being withheld on this basis.

**The Basis of the Claims the Third Amended Complaint**

Plaintiffs have produced, in response to UBS AG's request, all documents responsive to each request to produce to the extent the documents exist and are within Plaintiffs custody and control. The problem is that UBS AG and related defendants refuse to provide relevant information and documentation for the accounts they created for Plaintiffs benefit.

It is also completely inaccurate for UBS AG to suggest that Plaintiffs have refused to answer interrogatories regarding "those accounts". Rather UBS AG has failed to specifically seek information related to Plaintiffs' beneficially owned UBS AG accounts, has instead asked for all accounts outside the United States regardless of the holding entity, and has asked for information related to accounts during a period which is irrelevant. Should UBS AG submit an appropriate inquiry, whether by interrogatory or otherwise, my clients shall respond accordingly.

For reasons known only to it, UBS AG has failed to meet and confer on these issues, failed to revise and appropriately identify the information sought in their interrogatories, and has yet to properly investigate or obtain statements from pertinent witnesses. Furthermore, UBS AG has not made any effort to ask in special interrogatories for the factual basis of Plaintiffs' claims, assertions and causes of action. Thus, we believe it is premature to state, as you do, "Yet Plaintiffs have provided no factual basis for their assertions."

That statement is misleading for another equally compelling reason. The Third Amended Complaint is replete with factual assertions that support Plaintiffs' claims. In fact, each Defendant tested those assertions on several occasions and largely the Court denied each Defendants' motion to dismiss. Thus, while it serves little purpose in quoting verbatim the numerous and relevant alleging paragraphs in the operative pleading, I direct your attention to paragraphs 1-2, 59-79, 82-90, and 91(a)-(j), which taken together provide a proper basis for all claims, assertions and causes of action.

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
March 28, 2011
Page - 3 -

Your letter is mistaken with respect to another very important point. Plaintiffs have never contended they have no knowledge of the amounts deposited into UBS AG accounts, and have likewise never contended they are without knowledge of withdrawals either. Defendants have not asked by way of a request for admission about these matters and, again, Defendants have never asked in special interrogatories about these issues.

However, to dispel the notion upon which you base your premise, Plaintiffs are well aware of the initial deposits made into their UBS AG accounts and are reasonably certain of those deposits into the accounts held beneficially for them, though the very nature of UBS' cryptic account system and structure itself forms a basis for the accounting cause of action. The same cannot be said as it pertains to each withdrawal from the Olenicoff accounts because, as noted above, UBS AG and related defendants have refused to produce, or even identify proper documentation of these matters.

One might construe the assertions at page three (3) of your correspondence as an outline better directed towards a Rule 56 motion for summary judgment, and as such not warranting of serious consideration at this early stage of the litigation given the allegations that the UBS created scheme allowed for misdeeds to be conducted without detection by Plaintiffs or any of its clients. However, perhaps several points bear responsive comment.

UBS AG asserts Plaintiffs withdrew more money from their UBS AG accounts than was deposited. However because UBS AG refuses to provide all account information for both individually and beneficially held accounts, that claim cannot be subjected to legitimate scrutiny. The argument is misdirected and attempts to simplify this case for another reason. There is more to this case than a money-in versus money-out analysis. Again, I might direct your client's attention to the aforementioned paragraphs of the operative complaint.

In any event, whether UBS AG's accounting suggests a net-positive result has no bearing on whether false representations were made, and whether UBS AG and its managing agents acted in ways that harmed Plaintiffs. For instance, UBS AG's references to directives initiated by Andrei Olenicoff provide no sway on this issue. In fact, you will note that those transactions were only a small part of larger number of securities transactions at issue.

UBS AG states without citation to evidence that Plaintiffs have no basis to assert that UBS AG gave or received "illegal kickbacks that harmed Plaintiffs." We note that it is interesting UBS AG does not simply aver that it did not give or receive any illegal kickbacks. Rather it limits its admission to having not given or received any kickbacks that harmed Plaintiffs. From your client's statement, we surmise that whether UBS AG gave or received illegal kickbacks remains at issue, and as the operative pleading alleges the securities purchased related to those illegal payments were not in conformance with

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
March 28, 2011
Page - 4 -

---

the specific investment directives of Plaintiffs. To this end, please note that we do have third party witnesses who will testify to Plaintiffs' assertions, which witnesses were either listed in Plaintiffs Initial Disclosure Statement or are being reserved for rebuttal testimony since this may serve the veracity of their testimony without undue influence.

Remaining on this point, assuming that Plaintiffs withdrew in value more assets from UBS AG than was initially placed in their care does little to suggest the lack of a RICO claim. Rather, it might well be the case that Plaintiffs were unable to withdraw more from UBS AG in light of the improper kickbacks and Plaintiffs look forward to making their case in the proper forum.

Perhaps the most glaring deficiency in UBS AG's assessment of Plaintiffs' claims to date is its continued assertion that a viable claim only exists if Plaintiffs removed less than deposited from UBS AG accounts. This assessment is in error as it fails to grasp the gravity of the charging allegations. Without belaboring the point, we would direct your client's attention to Plaintiffs' initial disclosures and in particular those portions addressing Plaintiffs' monetary damages.

**Concluding Thoughts**

As you can garner from the detail provided in this responsive correspondence, Plaintiffs take seriously your suggestion that any of the causes of action found within the operative complaint lack merit warranting of Rule 11 sanctions.

In this regard, we would implore your client to produce forthwith the documents related to the beneficially owned accounts that we have been seeking. If as you suggest in your letter, there is evidence that calls into question the viability of any of Plaintiffs' claims, the issue with be thoroughly reviewed and appropriate action taken.

Sincerely,

John Marshall

*Enclosures as noted*
Cc:    *William J. King, Esq. (via e-mail w/ enclosures)*
        *Julie A. Ault, Esq. (via e-mail w/ enclosures)*

# EXHIBIT H

# JULIE A. AULT
### ATTORNEY AT LAW

SEVEN CORPORATE PLAZA
NEWPORT BEACH, CA 92660
TELEPHONE: (949) 719-7212
FACSIMILE: (949) 719-7210

May 3, 2011

**_Via E-Mail Transmission_**

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412

      RE:    _Igor Olenicoff and Olen Properties Corp. v. UBS AG, etc., et al._
              Case No. SACV08-01029 AG (RNBx)

Dear Kristopher:

      I write in response to your letter of May 2, 2011, which in turn was responsive to mine of October 14, 2010, March 10, 2011, March 15, 2011, and April 27, 2011. Your letter leaves open an important question regarding our Rule 37-1 meet and confer conference scheduled for May 4, 2011.

      You reiterate UBS AG's position that Plaintiffs have failed to comply with Rule 37-1 with reference that Plaintiffs have not identified the requests and issues to be addressed. However, as stated on a number of occasions, Plaintiffs provided a detailed letter October 14, 2010 that was 95 pages long and included in detail each of the document demands at issue, your response, and the reason(s) why further responses and production are warranted. I made mention of this fact in my recent April 27, 2011 letter. For some reason yours of May 2, 2011 fails to address the October 14, 2011 letter or how it might be deficient. Plaintiffs do not believe it is.

      If you feel that the October 14, 2010 letter fails in any respect to put your client on notice of the specific requests and issues, please advise today. Otherwise, we intend on proceeding with the conference May 4, 2011 as scheduled.

Sincerely,

John Marshall

Cc:    _William J. King, Esq. (via e-mail)_
       _Julie A. Ault, Esq. (via e-mail)_

# EXHIBIT I

## William King

| | |
|---|---|
| **From:** | Diulio, Kristopher P. [KDiulio@gibsondunn.com] |
| **Sent:** | Thursday, June 16, 2011 5:13 PM |
| **To:** | William King; Kitchens, Dean J. |
| **Cc:** | Boschee, Jessica A. |

**Subject:** RE: Conference with Judge Block

Bill:

We are unsure what, exactly, comprises Plaintiffs' "large list of items to address." We ask that Plaintiffs send a letter that conforms with Local Rule 37-1 (requiring the moving party to identify each issue or discovery request in dispute, along with the moving party's position and legal authority that supports that position, and a specific description of the discovery order the moving party seeks). Although Plaintiffs previously sent a letter that recited each of Plaintiffs' document requests, a letter that complies with Local Rule 37-1 is necessary for us to meaningfully meet and confer.

Depending on what Plaintiffs seek to compel, it may be more efficient for us to submit briefs in accordance with Local Rule 37-2. Until we know what Plaintiffs are seeking to compel, an informal meet and confer with Judge Block is premature.

Regarding UBS AG's outstanding discovery to Plaintiffs, you have not yet responded to my May 20, 2011 letter (even though you agreed to respond within seven days). In light of Judge Block's ruling and statements during yesterday's hearing, Plaintiffs should withdraw their objections and immediately produce the categories of documents described in that letter. Please confirm that Plaintiffs will now do so.

Best,

Kristopher


**Kristopher P. Diulio**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
3161 Michelson Drive, Irvine, CA 92612-4412
Tel +1 949.451.3907 • Fax +1 949.475.4630
KDiulio@gibsondunn.com • www.gibsondunn.com

---

**From:** William King [mailto:WKing@horizonlawgroup.com]
**Sent:** Wednesday, June 15, 2011 12:08 PM
**To:** Diulio, Kristopher P.; Kitchens, Dean J.
**Subject:** Conference with Judge Block

Kris/Dean:

Following yesterday's hearing and our previous attempts to meet-and-confer as to Plaintiffs' Request for Production of Documents, given that Plaintiffs' have such a large list of items to address, it makes sense for us to take Judge Block on his offer. I foresee additional discovery issues as well, so this may be a way to keep Judge Block happy and move the case along so that we can begin taking depositions.


8/15/2011

The judge's availability is as follows:  June 30, 2011, July 6, 13, 14, 15-18. Judge is not available July 19-29.  Ms. Ault from Olen (and who needs to attend) is not available between July 9 and 16.

Please let me know if UBS AG will be agreeable to this pre-Joint Stipulation format and, if so, what dates work best for you.

Very truly yours,

Bill

William J. King
Partner

**HORIZON LAW GROUP LLP**

Horizon Law Group, LLP
17991 Cowan
Irvine, California 92614
Tel.: (949) 261-2500  x.17
Fax: (949) 261-2515
Email: wking@horizonlawgroup.com

 Please print responsibly.

**CONFIDENTIALITY AND PRIVILEGE STATEMENT**
**The information contained in this electronic mail message (including attachments) is confidential information intended only for the use of the individual or entity named above, and may be privileged.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone (949/261-2500), and delete the original message.  If the content of this message relates to a contractual matter, neither Horizon Law Group LLP, nor any client of Horizon Law Group LLP, agrees to be contractually bound by this electronic communication, nor shall it be deemed to create an offer or contractual arrangement, nor shall any symbol, mark, word or phrase be deemed an electronic signature.**
**Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.**
**Thank you.**

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

8/15/2011

# EXHIBIT J

HORIZON LAW GROUP LLP

wking@horizonlawgroup.com

July 15, 2011

**<u>Sent via Email and First Class Mail</u>**

Kristopher P. Diulio, Esq.
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California 92612-4412

RE:   *Igor Olenicoff and Olen Properties Corp. v. UBS AG, etc., et al.*
Case No. SACV08-01029 AG (RNBx)

Dear Mr. Diulio:

Having reviewed the rules and reviewing our meet-and-confer process, I write this letter as one last attempt to resolve UBS AG's failure to properly and adequately produce documents in this litigation. As you review this letter, keep in mind that we believe the best resolution is to take Judge Block's offer to preside over an informal review giving us some indication of how he would rule thereby enabling us to resolve the majority of these discovery disputes. Such a stipulation would have to be agreed upon immediately, <u>by Monday, July 18, 2011</u>, or Plaintiffs will proceed on a motion to compel on the numerous production categories we have previously addressed *ad nauseum*. Finally, UBS AG's continued feigned ignorance regarding Plaintiffs' "large list of items to address" and reliance on questionable technicalities comes across as another attempt to stonewall Plaintiffs' right to discovery. All the parties to this litigation are governed by the same rules of discovery, UBS AG's gamesmanship has gone on long enough. We look forward to resolving these issues without Court intervention.

As you know, John Marshall at Olen Properties sent you a 95-page meet and confer letter in October 2010, which complied with L.R.37-1 and F.R.C.P. 37. This letter detailed each of Plaintiffs' issues with UBS AG's general objections and specific document responses. As you also know, UBS AG's objections predominantly consisted of objections based on relevance –either time parameters or any document that did not have Igor Olenicoff's name on it-- and on UBS AG's decision to hide behind Swiss Law in its efforts to resist producing documents related to the trusts it caused to be set up. These objections were addressed at the beginning of Mr. Marshall's letter and case law was provided or he noted where there was no law to support the objection. Plaintiffs then addressed the bases for providing further responses and/or documents. Plaintiffs then met and conferred on these issues in January. After dealing with other discovery issues, including UBS AG's own motion, we then met-and-conferred for over two hours in May where, in each instance, both parties treated these meet-and-confer efforts as the required precursors to address UBS AG's Responses to Plaintiff Igor Olenicoff's Request for Production of Documents (Set One).

For you to assert that this prior letter and our two-plus hour meet-and-confer was not a "meaningful" meet-and-confer -- and/or somehow does not include a discussion of the statutory requirements or lack of legal support-- is, again, disingenuous.

Nevertheless, in the spirit of making a final attempt to bring UBS AG to a more reasonable position, the following is a synopsis of the issues still at hand as they pertain to UBS AG's failed document production. You will note that most of this is redundant from our previous correspondence. However, I have also organized these into categories following a re-assertion of Plaintiffs' position as to UBS AG's "General Objections."[1]

<u>General Objections</u>

UBS AG's 3rd and 5th *General Objections* regarding possible violations of the Hague Convention are without merit. The United States Supreme Court has ruled, and every circuit to address the issues has agreed at one time or another, that the FRCP can be used at any time as the Hague Convention is not a necessary prerequisite to proceeding under the F.R.C.P. Thus, neither the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents nor Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters applies or precludes Plaintiff's discovery request. *See <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa</u>, 482 U.S. 522, 536, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987)*. Accordingly, any documents withheld on these bases need to be produced.

UBS AG's 4th *General Objection* is also without merit. There is no violation of Swiss, or any other sovereign states', law(s) related to financial privacy, business or trade secrets. The documents sought are in fact those beneficially belonging to Plaintiffs, and any purported concern of trade secrets or business confidential information has been addressed by the parties' in their Joint Stipulated Protective Order. On this issue, you have repeatedly asserted that a waiver by Plaintiffs or by New Haven's representatives –the defendants presently in default— would suffice. We disagree. UBS AG has already produced documents which pertain to those accounts. Consequently, they have either produced these documents on the opinion that it was safe to do so, or they waived the shield of the Swiss Law because they already have records regarding who the beneficial owner is. Either way, UBS AG is required  to produce all documents related to all accounts requested.

UBS AG's 6th and 8th *General Objections* are also without merit. The entire first set of requests for documents goes directly to the issues put at issue by the Third Amended Complaint ("TAC") and are neither overbroad nor burdensome.  The records provided by UBS AG and others to date clearly reflect the fact that UBS AG uses a variety of numbers, codes, and other identifying marks with respect to its client accounts, including Plaintiffs or those accounts held for Plaintiffs' benefit, as constructed by UBS AG and its co-conspirators.  Accordingly, any assertion of vagueness or overbroadness would be the result of said Defendants' own conduct and scheme.

---

[1] This letter incorporates our previous October 2010 letter and the meet-and-confer meetings which have already taken place. I also note that you did not assert most of these objections during our meeting, but rather chose to assert the arguments identified in the first two categories outlined below.

DiNuño/Kitchens
*Olenicoff, et al. v. UBS AG, et al.*
July 15, 2011
Page 3

Regarding relevance and scope, the relevant time period is the entire period set forth below and includes the following:

- The two-year period which predates the 2001 Qualified Intermediary Agreement ("QI Agreement"). Based on witness testimony, the IRS demands related to the QI Agreement and UBS AG's strategy to address this began sometime in 1999;
- The time period in which UBS AG and Plaintiffs had business relationships, approximately January 2001 through June 2005;
- The time period which Defendant Bradley Birkenfeld and UBS AG confirmed Birkenfeld's employment with UBS AG and any communications between said Defendants regarding Plaintiffs' account, whether specifically or generally.
- The time period following June 2005 when Plaintiffs' funds were transferred out of UBS AG, but continued to be controlled by its co-conspirators as well as the specific investment accounts of Plaintiffs as planned during UBS AG's tenure as financial advisors/bankers. Further, UBS AG has had, and continues to have, extensive contact and communication with the government or related agencies of the U.S. These continuing contacts and communications are central to many, if not all, of the issues to be litigated in this action.

Based on the foregoing, UBS AG's unilateral scope-restriction of document production to the years 2001 through 2005 is self serving, legally unsupportable and unreasonable . Well after December 31, 2005 UBS AG continued to have contact and otherwise communicate with Igor Olenicoff purporting to provide legal, marketing and business investment advice.

Moreover, the entire first set of requests for documents goes directly to the issues put at issue by the Third Amended Complaint ("TAC") and none are overbroad, vague, ambiguous, or burdensome. Any slight burden of production is equally borne by all parties to this, and any substantial, litigation of this nature.

UBS AG's 9th *General Objection* is also without merit. It is not required that the documents sought concern banking conduct by third party entities. Whether the documents are discoverable is dependent on whether they are relevant and within the possession, custody or control of UBS AG. Thus this objection is without merit, must be withdrawn, and the documents produced.

UBS AG's 12th *General Objection* is also without merit. The unilateral limitation of UBS AG's search to accounts in the name of Igor Olenicoff that can be located through a reasonable search is inappropriate for several reasons. First, it was UBS AG and its agents who specifically solicited plaintiffs not only in 2001 but also, well into 2006. Second, it was UBS AG and its agents that suggested and then formed a series of related entities for the beneficial interest of Plaintiffs, but which Plaintiffs had no control or signatory authority. Third, UBS AG has been aware since as early as 2001 that neither Plaintiff in this action was actually identified on a UBS AG account. However, UBS AG continued to contact Plaintiffs by e-mail, phone, facsimile, and messengered documents and transmissions relevant to the very accounts which UBS AG caused to be created and maintained for the benefit of Plaintiffs. As a result, no such

Diulio/Kitchens
*Olenicoff, et al. v. UBS AG, et al.*
July 15, 2011
Page 4

limitation regarding the production of documents requested by Plaintiffs can be unilaterally imposed by UBS AG. All documents must be produced as demanded, not just those UBS AG believes it can "reasonably" find. The limitation to searching through custodians Bovay, Guignard and Birkenfeld is wholly inappropriate. UBS AG is required to conduct a full scale, corporate wide search for all responsive documents. Finally, as stated above the limitation of search dates from 2001 to 2005 is inappropriate and unwarranted as there are large volumes of data and documentation which have been created, assimilated, and forwarded to the government or related agencies of the United States of America that comply with Plaintiffs request for production of documents.

Categories of Responses

In addition to the above general objections, which have been restated in specific responses to specific requests, the bulk of UBS AG's objections can be categorized as follows:

1. Swiss/Hague/Non-Olenicoff Documents
2. Tax-Evasion/QI Scheme-Related
3. Publicly Available

**A.** **Swiss/Hague/Non-Olenicoff Documents**

The documents that fall under this category are those found in Request Nos.: 1 – 7, 10 – 13, 15 – 19, 26, 28 (and 25 and 27 to a scope-narrowing degree), 29 – 49, 51 – 53, 58 – 61, 73 – 75, 85 – 98, 110 – 114, 117 – 121, 123 – 125,126 – 128, 132 – 139.

As you verbally stated to me in our last meeting, UBS AG refuses to produce any documents which do not contain the names of Olenicoff or Olen Properties. UBS AG takes this position even through you admit that UBS AG is well aware that the other accounts – New Guardian Bancorp and Landmark Settlement Trust— *which UBS AG helped set up as part of its IRS-defrauding scheme,* were held for Plaintiffs' benefit and that UBS AG corresponded with its co-defendants regarding these accounts on Plaintiffs' behalf. UBS AG further wishes to assert "Swiss Law" though you fail to provide any actual statute to support this argument. We have countered with a demand that you provide us with the Swiss Law and instead you insist that Plaintiffs obtain waivers from the very entities UBS AG created.

UBS AG has failed to provide any legal basis for requiring the above mentioned waivers. Therefore, Plaintiffs are not required to obtain them and these documents must be produced. Moreover, based on UBS AG's cohort New Haven Trust's lack of communication, such waivers are not likely available anyway. Should UBS AG assert that Plaintiffs may execute these waivers instead of the New Haven Trust trustees, UBS AG would be acknowledging Plaintiffs' ownership of the accounts thereby contradicting its own position. Indeed, UBS AG has already produced documents

Diullo/Kitchens
*Olenicoff, et al. v. UBS AG, et al.*
July 15, 2011
Page 5

related to these trusts. Further, Plaintiffs are not agreeable to relieving UBS AG of *any* potential liability it owes to Plaintiffs.[2]

We have already addressed why the Hague Convention does not apply as asserted in your General Objections Nos. 3 and 5. This leaves only objections that the requests are overbroad, burdensome and beyond the scope of the TAC. As UBS AG provided in its own moving papers, it is not enough to assert a request is overburdensome. *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 562 (N.D. Cal. 2003) [holding that the objecting party must define the nature of the burden allegedly imposed in producing documents]. As for what is beyond the scope of the TAC, UBS AG cannot unilaterally decide what is and is not beyond the scope of Plaintiffs' claims as they pertain to UBS AG.

As described more fully in Section B., below, the TAC alleges both general and specific conduct by UBS AG that contributed to Plaintiffs' damages. It includes a scheme designed to manipulate and defraud the IRS, Plaintiffs and other UBS similarly situated U.S. customers. It includes conduct that pre-dates Plaintiffs deposits of funds into UBS accounts and conduct set in motion by UBS AG well after the money was transferred in June 1995. Indeed, the entire list of document requests pertain to monies held in the name or for the benefit of Plaintiffs with a few small exceptions. Request Nos. 25 -- 28 pertain to Birkenfeld's relationship within UBS which is well within the TAC's scope since it alleges UBS AG and Birkenfeld are co-conspirators and the documents sought pertain to Birkenfeld's employment *at the time* UBS AG was managing Plaintiffs' accounts, bringing the requests well within the auspices of FRCP Rule 26(b).[3]

Likewise, Request Nos. 29 through 48 pertain to communications between UBS AG and the list of co-defendants. While UBS AG agrees to produce documents, it arbitrarily limits said production to only those documents containing Olenicoff's name. While there may not have been any communications with some of the defendants, there were obviously communications with the New Haven Defendants (Staggl, Biedermann, Macaw) regarding the New Guardian and Landmark trust accounts. This was the very set up that UBS AG concocted and that Plaintiffs complain about in the TAC Failure to produce documents related to these accounts is a violation of Rule 26 Initial Disclosures regardless of any demand made by Plaintiffs.

I also note that as to Request Nos. 58 – 61, 73 - 75, UBS AG objects that unless it is ordered by a Swiss Court as to its efforts to open accounts for U.S. citizens including training memos, videos, marketing plans, etc., these documents will not be produced. There is no basis for this position. UBS is again attempting to hide behind the Swiss Law and rely on the Hague requirements, while it conducts discovery in compliance with the Federal Rules of Civil Procedure. UBS AG has already admitted in court and publicly to the exact scheme alleged by Plaintiffs in the TAC. Producing the requested documents will not violate its trade secret privilege for this illegal mechanism.

---

[2] Note that Plaintiffs obviously could not bring a claim of breach of confidentiality for demanding that UBS AG produce Plaintiffs own documents, regardless of their characterization of ownership.
[3] Even the Request Nos. 71 and 72 regarding Birkenfeld's money goals and Net new Money targets can be included here since the entire scheme was designed to put money in UBS's pocket by motivating its bankers with incentives.

Diulio/Kitchens
*Olenicoff, et al. v. UBS AG, et al.*
July 15, 2011
Page 6

**B.    Tax-Evasion/QI Scheme-Related**

The documents that fall under this category are those found in Request Nos.: 8, 9, 20 – 23, 54, 56-61, 63, 73, 74, 85 – 93, 94 – 98.

These documents all pertain to any UBS AG intra- and extra-office communications/ documents which related to UBS AG's admitted intent to avoid the QI Agreement with the IRS while also preying on wealthy, unsuspecting U.S. investors. Interestingly, you have stated to me that you have arbitrarily placed Olenicoff *outside* the category of these investors and the tax-evasion scheme admittedly perpetrated by UBS AG. In other words, you have arbitrarily decided to limit your production based on a relevance objection.

It is not UBS AG decision to decide what is relevant. As Judge Block provided during oral argument on UBS AG's motion, the relevance scope is pretty broad since the issue do not regard admissibility.

FRCP Rule 26(b)(1)  provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to *any party's claim* or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

(emphasis added).

As you are well aware, the TAC is filled with claims against UBS AG for its conduct related to a global scheme that includes Plaintiffs as two of the numerous victims. (TAC ¶¶ 60 – 67, 91, 115-116, and 220(b) and 226, e.g.[regarding conspiratorial acts of the scheme perpetrated against Olenicoff *and other customers*]). Consistent with the above excerpt, Plaintiffs' document requests include those documents related to the global scheme admitted by Birkenfeld, Weil and Kurer. If UBS AG wishes to address the admissibility of such information prior to trial, then it may do so. However, it *must* produce the requested documents contained in the Request Nos. identified above.

Accordingly, and based on Judge Block's statements at the June 14, 2011 hearing, any correspondence and/or documents not produced which pertain to the QI Agreement, the scheme to feign compliance while developing and employing programs to conceal customer monies, the training of employees to market to and secure investments by U.S. wealthy customers, etc. must be produced.

Diulio/Kitchens
*Olenicoff, et al. v. UBS AG, et al.*
July 15, 2011
Page 7

**C.     Publicly Available**

This category actually only pertains to one specific request. Request No. 70 seeks documents related to the U.S. Senate Subcommittee on Investigations interview in June 2008. UBS AG's only objection is that the non-attorney-client privileged documents are not relevant to this action. The fact that both Plaintiffs' TAC and the Senate Subcommittee's interview focus directly on the complained-of scheme, it is safe to assume Rule 26(b)'s relevancy requirement has been met. Further, even if said documents were publicly available, this does not absolve UBS AG of its duty to produce pursuant to the local rule.

Again, since we have gone over these issues numerous times, the parties have satisfied the meet-and-confer requirements. Accordingly, if UBS AG refuses to withdraw its objections that it will not produce documents responsive to the entire time period sought,  to the QI Agreement and IRS-defrauding scheme, and all accounts related to Plaintiffs, and if UBS AG is not willing to bring these issues informally to Judge Block,  Plaintiffs have no choice but to seek court intervention and to file the joint stipulation and motion to compel.

UBS AG has until 5:00 p.m., Monday, July 18, 2011 to advise Plaintiffs on how it intends to proceed.

Very truly yours,

William J. King

cc:     Julie Ault, OPC
        Marisa Poulos, OPC