William J. King, Esq. (Bar No. 199908)
William C. Hoggard, Esq. (Bar No. 192329)
HORIZON LAW GROUP LLP
17991 Cowan
Irvine, CA 92614
Tel.:  (949) 261-2500
Fax:  (949) 261-2515
Email:  wking@horizonlawgroup.com

Julie A. Ault, Esq. (Bar No. 186914)
Marisa D. Poulos, Esq. (Bar No. 197904)
7 Corporate Plaza
Newport Beach, CA 92660
Tel.:  (949) 719-7212
Fax:  (949) 719-7210
Email:  jault@olenproperties.com
        mpoulos@olenproperties.com

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| IGOR OLENICOFF et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>UBS AG et al.,<br><br>        Defendants. | Case No. SACV08-01029 AG (RNBx)<br><br>**DECLARATION OF FRANCIS E. QUINLAN IN SUPPORT OF MOTION FOR CONTINUANCE OF TRIAL DATE AND AMENDMENT OF SCHEDULING ORDER**<br><br>*(Filed Concurrently with Notice of Motion and Motion For Continuance Of Trial Date And Amendment Of Scheduling Order, Declarations of Igor Olenicoff, Julie A. Ault and William J. King)*<br><br>Hearing:  October 17, 2011<br>Time:  10:00 a.m.<br>Dept:  10D<br><br>Discovery Cutoff:  November 7, 2011<br>Pretrial Conf.:  January 23, 2012<br>Trial Date:  February 7, 2012 |

DECLARATION OF FRANCIS E. QUINLAN

# DECLARATION OF FRANCIS E. QUINLAN

I, Francis E. Quinlan, declare as follows:

1. I am an attorney duly licensed to practice law before all state and federal courts of California. I am of counsel to the law firm of Newmeyer & Dillion LLP ("N&D"), counsel of record for Igor Olenicoff and Olen Properties Corp. ("Plaintiffs" or "Olen") in the above-entitled matter. I have personal knowledge of the following, and, if called to testify, I could and would do so competently.

2. I am part of the legal team of N&D prepared to take over the subject litigation in the even a continuance is granted. In my career I have:

   a) conducted tax fraud investigations as an FBI Agent jointly with the IRS Criminal and Civil Investigative Divisions.

   b) studied state and federal taxation leading to a Master of Laws in Taxation and been involved in a number of tax cases as a lawyer, both civil and criminal.

   c) recently completed a tour of active service with the Marine Corps directing a staff of 30 investigators, lawyers and intelligence agents who conducted an investigation which involved obtaining, constructing and searching a database that consisted of multiple terabytes of classified emails and documents.

   d) served as Audit Committee Chairman for two large business entity boards of directors, and also on the Investment Committee of one. In these capacities I routinely engage with public accountants, investment advisors, actuaries and investigators in the governance business of ensuring proper financial controls, preventing fraud and minimizing risk to corporate assets, particularly securities investments.

   e) recently been engaged as general counsel for two limited partnerships of approximately $50 million in assets that were created by the Texas

1 based Ponzi-schemer Sir Allen Stanford, now a federal prisoner. That case involved accounting for over $8 billion of investments and tracing funds that purportedly deposited in CDs in the Stanford International Bank in Antigua, a fact later proved untrue and which informs the prospect of determining banker misconduct that aids and abets fraud upon investors.

3. N&D was first asked to potentially substitute in as trial counsel for Plaintiffs on August 31, 2011. While N&D cannot commit to undertaking Plaintiffs' representation unless a continuance is granted, it has been working diligently to get up to speed on the facts of this complex case. On September 2, 2011, I received from William King a copy of a disc produced that day by defendant UBS AG, comprising over 7,300 files. N&D has had copies made of the files which completely filled two banker boxes with records. For purposes of this declaration I cursorily reviewed these records. In rough form, the documents comprise bank account statements dating from approximately 2000 to 2005, several reams of Congressional Record materials available on the web, a few documents related to trust agreements with Neue Bank and New Haven Trust, among others, and a very few emails and letters between and among the UBS and their affiliated bankers who handled Plaintiffs' accounts. Some of the materials are in French or German, and all of the bank statements are prepared in a style that is unfamiliar to most Americans and often cryptic in its presentation. Because the materials were not delivered in an electronically searchable format, merely organizing them for analysis will take significant time. Preparing a forensic analysis of the flow of funds into and through the various entities employed by UBS AG to hold Plaintiffs' assets will take several months. Determining the tax posture of the Plaintiffs' funds is critical to the case and cannot be performed by an expert until the forensic work is done. Determining the financial interest of UBS AG in this matter will be difficult from the records produced so far, and that interest is key to the case.

4. In my experience the documents produced by UBS AG are just the shell of the record of the bank's relationship with the Plaintiffs, and almost completely devoid of email traffic which in modern cases produces the critical record of what the participants were doing and saying to each other. From the very few emails produced it is clear that there were both candid and guarded conversations among the bankers as they maneuvered Plaintiffs' funds over the years. It is incomprehensible that there were not many more emails sent during the years in question, particularly in and around 2005 when the Plaintiffs' funds on deposit with UBS AG were transferred into "internal" UBS AG accounts. Recent press reports suggest the Department of Justice has evidence that UBS AG moved customer funds into smaller cantonal banks or extraterritorial banks to remove them from UBS AG direct account reporting without giving up control and the substantial fees generated by such control. On September 11, 2001, Reuters reported that the US Department of Justice is preparing a case against Liechtensteinische Landesbank, Lichtenstein's oldest bank, for criminal tax fraud. (http://www.huffingtonpost.com/2011/09/09/us-bank-tax-dodgers_n_956345.html).

4. To present a complete picture of this case all of those unproduced emails must be disclosed. To ensure a full understanding of the way UBS AG and its affiliated bankers operated will require experts in offshore banking, offshore entity formation and Swiss banking secrecy. To identify and brief such experts will take time and several months of documents review, providing that UBS AG produces the records it is required to produce.  At the U.S. end, Plaintiffs' records will have to be reviewed by our firm and percipient witnesses will have to be debriefed once the forensic analysis is completed so that a full financial picture comes clear and reviewable by the retained experts prior to trial.

I declare under penalty of perjury under the laws of the United States that the above statements are true and correct this 13th day of September, 2011.

1
2   _____
    Francis E. Quinlan
3
4
5
...
28